IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEFF POFF,

                        Plaintiff,

      v.

LIEUTENANT FISHER, SERGEANT
OSWALD, SERGEANT SAYLOR,
CORRECTION OFFICER WARNER,
CORRECTIONAL OFFICER
HAEKENSACK, and NURSE ADAMS,

                      Defendants.

OPINION AND ORDER

22-cv-238-wmc

In this lawsuit, *pro se* plaintiff Jeff Poff was given leave to proceed under § 1983 on claims that: (1) defendant Lieutenant Fisher used excessive force against him on July 14, 2020; and (2) the remaining defendants failed to intervene. Following discovery, defendants have moved for partial summary judgment as to Poff's failure-to-intervene claims for failing exhaust his administrative remedies before filing in federal court. (Dkt. #20.) In addition, Poff now asks the court to help recruit counsel to represent him. (Dkt. #38.) For the following reasons, the court will grant defendants' motion for partial summary judgment and dismiss without prejudice Poff's claim that defendants Oswald, Saylor, Warner, Haekensack and Adams failed to intervene in face of Fisher's alleged excessive use of force against Poff, as well as deny Poff's present request for assistance of counsel without prejudice.

## I. Defendants' motion for partial summary judgment

Defendants' motion concerns plaintiff's failure-to-intervene claims brought against

defendants Oswald, Saylor, Warner, Haekensack, and Adams.  Prisoners may not bring a federal claim about events in prison "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In other words, a prisoner must follow all of the prison's rules for completing its grievance process.  *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  This includes:  (1) compliance with instructions for filing an initial, administrative grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); and (2) pursing *all* available appeals from a denial of a grievance "in the place, and at the time, the prison administrative rules require," *Pozo*, 286 F.3d at 1025; *see also Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).  Moreover, "[e]xhaustion is necessary even if . . . the prisoner believes that exhaustion is futile."  *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006); *see also Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement.").

This exhaustion requirement is intended to afford prison administrators a fair opportunity to resolve a prisoner's grievance without litigation.  *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006).  Thus, a prisoner's failure to exhaust constitutes an affirmative defense, which defendant must prove, *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018), and at summary judgment, defendants must specifically show that: (1) there is no genuine dispute of material fact as to plaintiff's failure to exhaust; and (2) they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In Wisconsin, prisoners must begin the exhaustion process by filing a grievance with an institution complaint examiner ("ICE") within 14 days after the incident giving rise to

the grievance.  Wis. Admin. Code § DOC 310.07(2).  Among other requirements, a grievance must contain only one, clearly identified issue, as well as sufficient information for the department to investigate and decide the complaint.  § 310.07(5)-(6).  While the ICE may reject a grievance for specified reasons, § 310.10(6), the prisoner may still appeal the rejection to the appropriate reviewing authority within 10 days under § 310.10(10).  If the ICE accepts the grievance, then a recommendation is made to the reviewing authority, who in turn renders a decision.  §§ 310.10(12), 310.11.  If the ICE's recommendation is unfavorable, then the prisoner may appeal to the corrections complaint examiner ("CCE") within 14 days of the decision, unless good cause is shown for an untimely appeal.  *Id*. § 310.12(1), (6).  Finally, the CCE then makes a recommendation to the DOC Secretary, who will take final action on the prisoner's grievance.  *Id*. § 310.13.

Before filing suit in this court, the plaintiff here filed the following two, separately bolded inmate grievances related to his claims in this lawsuit, which were resolved as set forth below.

1. **Grievance WSPF-2020-12764:**  Plaintiff alleged that after informing Fischer that he had urinated on himself, Fischer "applied a pressure point [choke] hold style around [plaintiff's] neck."  (Dkt. #19-2 at 12.)  After reviewing Fisher's incident report and video footage of the incident giving rise to the grievance, the ICE recommended dismissing the complaint, and the reviewing authority accepted that recommendation.  Plaintiff then appealed to the CCE, stating that: because defendant Haekensack knew the truth about the incident, he should have been interviewed; and disputing that the video evidence supported Fisher's

3

account of the incident.   Nevertheless, the CCE recommended dismissal, and the Secretary ultimately accepted that recommendation.

2. **Grievance WSPF-2020-13643:**   Plaintiff alleged that Fisher placed him in a choke hold twice but those incidents were never investigated.  The ICE rejected his complaint as duplicative, noting that the excessive force issue raised would be addressed in WSPF-2020-12764.  Plaintiff did not appeal the rejection.

Defendants concede, as they must, that plaintiff exhausted his excessive force claim against Fisher.  As for plaintiff's failure-to-intervene claims, however, since neither of Fischer's cited grievances about the incident assert that *any* prison staff failed to intervene and prevent Fisher from chocking plaintiff, defendants argue his failure-to-intervene claim must be dismissed for failure to exhaust.   Specifically, defendants point out that Wis. Admin. Code § DOC 310.09(1)(e) requires inmates to "clearly identify the issue" in their inmate complaints, and plaintiff did *not* mention any other defendant than Fisher in his initial grievances or make any reference to other staff being present yet doing nothing about Fisher's alleged excessive force.   And even though plaintiff references defendant Haekensack in his appeal, he merely notes that the Officer Haekensack would know what Fisher did and should be interviewed.

In fairness, plaintiff was not required to identify each defendant by name or specify a legal theory.  *See Jones v. Bock*, 549 U.S. 199, 219 (2007) ("exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances"); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("All the grievance need do is object intelligibly to some asserted shortcoming.").  However, plaintiff failed to alert the ICE of

his belief that even one other staff had failed to intervene when confronted with defendant Fisher's alleged use of excessive force.  Thus, the institution had no meaningful opportunity to investigate this aspect of plaintiff's present complaint before he filed suit in federal court. *See Jones*, 549 U.S. at 204 ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.").

Finally, plaintiff would argue the merits of his claims in response to defendants' exhaustion motion, but the merits are not at issue yet since defendants only seek summary judgment on the question of his exhaustion of administrative remedies.  Plaintiff is still proceeding against Fisher on an excessive-force claim, but his claims against the remaining defendants for failing to intervene must be dismissed without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("[A]ll dismissals under § 1997e(a) should be without prejudice").  As a result, defendants Oswald, Saylor, Warner, Haekensack, and Adams are all entitled to have the claims against them dismissed without prejudice on exhaustion grounds.

## II. Plaintiff's request for the court's assistance in recruiting counsel

Plaintiff separately asks the court to help him recruit counsel to represent him.  As a starting point, the court receives over 200 new *pro se* lawsuits every calendar year, but only 15 to 20 attorneys are willing to consider taking these cases even when actively recruited by the court, and they do not each take even one every year.  Although the court would try to recruit a volunteer attorney for every *pro se* litigant if enough lawyers were available, the court is forced to marshal this scarce resource.

Moreover, *pro se* litigants do not unfortunately have a right to a lawyer in civil cases, *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), so a district court must exercise discretion in helping *pro se* litigants find a lawyer to represent them, *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007).  In particular, a party who wants assistance from the court in recruiting counsel must meet certain requirements.  Specifically, plaintiff must show at minimum that he is unable to afford counsel, that he has made reasonable efforts on his own to find a lawyer to represent him, and that the legal and factual difficulty of the case exceeds his ability to prosecute it.  *Santiago v. Walls*, 599 F.3d 749, 760-61 (7th Cir. 2010); *Pruitt*, 503 F.3d at 654-55.

Here, plaintiff is proceeding *in forma pauperis*, and has provided several letters showing that he has unsuccessfully tried to find a lawyer on his own.  (Dkt. #38-1.) However, the court is not persuaded that plaintiff is unable to litigate this case on his own. To the contrary, this case now concerns one incident of excessive force involving one defendant, and it does not appear complex.  Even plaintiff's attached evidence of ongoing mental illness issues does not explain how he is affected or what specific litigation tasks he is unable to complete as a result.  Moreover, plaintiff has been capably advocating for himself so far, having filed several motions, discovery requests and a response to defendants' summary judgment motion with supporting exhibits, all of which are understandable and reflect an understanding of his claims and the relevant facts and law. (Dkt. ##6, 12, 22-25, 27, 30-32, 34, 36-38, 45-47.)

Plaintiff also asserts that this case will require an expert witness to establish whether Fisher used a choke hold or a "compliance hold" on him.  (Dkt. #38 at 2.)  Federal Rule

of Evidence 706 allows a court to appoint a neutral expert when doing so is necessary to help the court or the jury "interpret complex information . . . , not to represent the interests of one party." *DeJesus v. Godinez*, 720 F. App'x 766, 772 (7th Cir. 2017) (citing *Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016)).  Regardless, the facts of this case are far from fleshed out with respect to Fisher's conduct especially, and it is too early to tell whether this matter will proceed to trial, let alone turn on "complex information" beyond the court's or a jury's understanding.  For now, plaintiff should focus on gathering evidence in support of his excessive force claim through the discovery process and preparing for summary judgment.  Plaintiff may then renew his motion should he proceed to trial on his remaining claim.

## ORDER

IT IS ORDERED that:

1) Defendants' motion for partial summary judgment (dkt. #20) is GRANTED. Plaintiff's failure-to-intervene claims against defendants Oswald, Saylor, Warner, Haekensack, and Adams are DISMISSED without prejudice and these defendants are DISMISSED from this lawsuit.

2) Plaintiff's motion for assistance in recruiting counsel (dkt. #38) is DENIED without prejudice.

Entered this 17th day of February, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge