IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFF POFF,

                Plaintiff,                OPINION AND ORDER

v.

                                                22-cv-238-wmc

LIEUTENANT FISHER,

                Defendant.

---

*Pro se* plaintiff Jeff Poff is incarcerated at the Wisconsin Secure Program Facility ("WSPF"), where on July 14, 2020, he alleges that defendant Fisher choked him despite his already being strapped down in restraints in a controlled observation cell. As part of discovery against her for use of excessive force, Fisher produced a single video of the alleged incident taken from a stationary camera in Poff's cell. However, Poff maintains that additional video exists and is now appealing Magistrate Judge Crocker's denial of his motion to compel its production and to sanction defendants for withholding or destroying evidence.[1] (Dkt. ##45-47.) For the following reasons, the court must deny Poff's motions to reconsider the magistrate judge's order and renewed motion to compel. Still, the court will reserve ruling on Poff's motion for sanctions on a fuller record at summary judgment or trial.

---

[1] Poff also moves the court to compel defendant to produce all video footage of the two searches of his cell that occurred on July 27, 2022. (Dkt. #51.) The court will deny that motion as moot because defendant has since produced six videos of those searches, including body-worn camera as well as vestibule, sergeant's station, and main hall footage that Poff and the court have had the opportunity to review. (Dkt. #56.)

I. **Plaintiff's appeal from the magistrate judge's order (dkt. #45)**

Plaintiff provides no basis to reconsider the magistrate judge's January 26, 2023, order denying without prejudice his motion to compel and for sanctions. (Dkt. #44.) Rather, after initially filing his discovery requests with the court, Poff sent his requests to defense counsel on November 29, 2022, and filed his motion to compel 30 days later, after not receiving any response. As Magistrate Judge Crocker correctly explained, however, the defendant had 30 days to respond after his requests were *received*, not sent, so plaintiff's motion to compel was premature. Although there is no basis to reconsider the magistrate's orders, the court will proceed to address the parties' apparent, ongoing discovery dispute as set forth in plaintiff's renewed motion.

II. **Plaintiff's motion to compel discovery and to impose sanctions (dkt. ##46, 47)**

In renewing his motions to compel production of all additional video of the July 14 incident and to sanction defendant for withholding or destroying it, Poff contends that he cannot prove his excessive force claim without additional video since the officers are blocking the view of defendant in the single, existing cell camera video, and that video has no sound. Further, defendant admits that one of the officers in plaintiff's cell that day *was* wearing a body camera (Hagensick), and plaintiff suggests that there were at least two others who also wore body cameras (Moravits and Warner). (Dkt. #59 at 8.)[2]

---

[2] In some of his motions and briefing, plaintiff requests information and evidence related to Officer Moravits. (Dkt. #45 at 2). Plaintiff cannot make discovery requests this way; he will have to submit formal discovery requests to defendant.

Even so, defendant maintains that no body-worn camera ("BWC") video was ever recorded, and the evidence plaintiff offers does not establish that any such video exists now. Similarly, his public records request for all videos of the July 14 incident turned up no BCW footage. (Dkt. #47-3 at 15.) Further, although defendant told plaintiff that he could make an appointment with WSPF's litigation coordinator to view the video "Poff, Jeff 7-14-2020 Bed Restraints" (dkt. #47-1 at 2-3), that video was apparently an additional copy from the cell camera, which plaintiff has already reviewed. WSPF's litigation coordinator attests that despite multiple searches for any BWC video from July 14, 2020, none has been found, and that any such video would have been preserved because the incident in question was considered significant. Accordingly, the coordinator surmises that because plaintiff was nude during the incident, and officers would have been unsure at that time whether they should be filming nude prisoners with their BWCs, Hagensick at least probably did not turn his on. (Dkt. #56 at 2.)

In response, plaintiff points to the mechanical restraints policy requiring "reactive" incidents involving a "bed or chair restrain placement" be videotaped as much as practical (dkt. #62-1 at 4), but that policy does not address the question of whether officers could or should film nude inmates. Plaintiff also references a supervisor comment in the July 14 incident reports supposedly providing written confirmation of preserved BWC video that were destroyed when his cell was searched in 2022, but these assertions do not establish the existence of additional videos either. For one, the incident reports do not indicate that BWC video was recorded; and although the reviewing supervisor repeatedly notes that video of the incident was downloaded for review, there is no indication that this is BWC

3

or any other type of video than the fixed cell camera video that has already been produced. (Dkt. #47-2 at 1, 4, 6, 7.)  Nor is there any evidence corroborating plaintiff's new claim that a former security director gave him written confirmation that BWC video had been preserved.  In addition, the security director does not recall any such correspondence with plaintiff, and there is no record of any correspondence in "SharePoint," the central database where correspondence written by inmates is tracked and stored.  (Dkt. ##54; 56 at 3.)

While plaintiff also asserts that he notified the new security director in March 2022 via an information request that the previous director had preserved BWC video form the July 2020 incident, his actual request does not reference *BWC* video specifically, plaintiff simply notes that the previous security director had retained "the video in question" (dkt. #45-4 at 5); and none of plaintiff's other requests to view video note that *BWC* video had been preserved (dkt. #45-5).  Next, plaintiff claims that this correspondence with the previous security director was purposely destroyed by officers who twice searched his cell on December 27, 2022, looking for an officer's unrelated personal letter that had been mistakenly given to plaintiff.  Yet there is no evidence in any of the six videos defendant submitted suggesting the searches were in any way improper or suspicious, *and* the property receipt indicates that only a pen and some binders, brown folders, and notebook backs were "disposed on unit." (Dkt. #61-2.)

In reply, plaintiff now accuses some of the officers of perjuring themselves in their declarations, contending that there is more to the story than the videos of the searches reveals, and even suggesting that there are more videos than have been submitted, but this

4

rank speculation gives the court no basis to infer that any of the officers behaved differently off camera, nor that defendant herself withheld available video from the court.[3] *Cf. Boyd v. Pollard*, 621 F. App'x 352, 355-56 (7th Cir. 2015) (no basis to infer that guards attacked plaintiff outside the camera's view "given the professional behavior of the guards" on camera and plaintiff's minor injury); *Gillis v. Pollard*, 554 F. App'x 502, 505 (7th Cir. 2014) (rejecting plaintiff's assertion that prison guards struck his groin when a video recording was "fairly comprehensive" and refutes the claim). Indeed, plaintiff is not proceeding in this lawsuit on any claims involving the cell searches, sexual harassment or conduct reports, and these allegations shed no light on the restraint incident at issue here. Thus, defendant's assertion that every discoverable piece of evidence has been given to plaintiff is credible.

Without evidence that any BWC or other video exists of the subject incident, other than the video previously provided, the court must deny plaintiff's motion to compel production. As for plaintiff's assertions of spoliation and a right to sanctions, he must establish that the opposing party destroyed material evidence for the purpose of hiding adverse information. *Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013). Here, WSPF's litigation coordinator attests that BWC video would have been preserved given the significant nature of the underlying incident in this case. In contrast, plaintiff asserts

---

[3] Plaintiff also seeks to compel several non-party officers to submit affidavits concerning their involvement in the cell searches and in a conduct report, and to admit evidence concerning a non-party officer's allegedly unlawful, unrelated conduct toward plaintiff and two other, non-party inmates. (Dkt. ##59 at 10; 61 at 8.) However, the court will not compel such evidence as civil discovery rules do not require non-parties to provide affidavits, and the video evidence speaks for itself.

that there were three officers wearing body cameras on July 14 as confirmed by the existing cell camera video.  (Dkt. #59 at 8.)  He also asserts that he knew those cameras were recording because the red light on each was on, something confirmed on the cell camera video.  (Dkt. #61 at 6.)  However, that video is not yet in the record before this court, and neither are the statements from the officers that plaintiff maintains were wearing a body-worn camera.

Of course, with *proof* that such BWC video existed and was destroyed in bad faith, plaintiff may be entitled to an "adverse inference" permitting the trier of fact to draw an inference that the destroyed evidence would have been unfavorable to defendant.  *See Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001) (denying adverse inference instruction when moving party "offered no evidence, other than his own speculation, that [the documents] were destroyed to hide discriminatory information").  Therefore, the court will reserve ruling on the question of spoliation until the parties have had the opportunity to present all exculpatory and inculpatory evidence.  Thus, defendant should file under seal a copy of the cell camera video and may supplement her response to plaintiff's request for sanctions with any evidence addressing his claim that the body cameras were recording.  Meanwhile, to allow defendant sufficient time to prepare for summary judgment and any supplemental response, the court will also extend the dispositive motions deadline by 30 days to May 30, 2023.

ORDER

IT IS ORDERED that:

1) Plaintiff's appeal of the magistrate judge's January 26, 2023, order (dkt. #45) is DENIED.

2) Plaintiff's motion to compel production of cell search videos (dkt. #51) is DENIED as moot.

3) Plaintiff's motions to compel production and impose sanctions (dkt. ##46, 47) are DENIED insofar as plaintiff seeks to compel production of additional videos of the July 14, 2020, restraint incident; and the court will reserve ruling on plaintiff's request for sanctions until summary judgment.

4) The dispositive motions deadline is extended to May 30, 2023, by which time defendant must submit the cell camera video under seal and may submit a supplemental response to plaintiff's request for sanctions.

Entered this 17th day of April, 2023.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge